STATE OF CONNECTICUT *v.* DELIO VASQUEZ

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued June 5—decision released August 19, 1980

*Bruce A. Sturman,* assistant public defender, with whom, on the brief, was *David Kaplan,* assistant public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The single issue on this appeal is whether the trial court erred in its instructions to the jury regarding the manner in which they should ascertain the defendant's state of mind or intent. In his brief and in oral argument before us, the defendant's counsel abandoned all other issues preliminarily raised.

The defendant Delio Vasquez was charged in a substituted information in four counts with burglary in the third degree in violation of General Statutes § 53a-103,[1] possession of burglary tools in violation of General Statutes § 53a-106,[2] larceny in

---

[1] General Statutes § 53a-103 provides in part: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes § 53a-106 provides in part: "(a) A person is guilty of manufacturing or possession of burglar's tools when he manufactures or has in his possession any tool, instrument or other thing adapted, designed or commonly used for advancing or facilitating offenses involving unlawful entry into premises, or offenses involving forcible breaking of safes or other containers or depositories of property, under circumstances manifesting an intent to use or knowledge that some person intends to use the same in the commission of an offense of such character."

the fourth degree in violation of General Statutes § 53a-125[3] and interfering with a police officer in violation of General Statutes § 53a-167a.[4] He pleaded not guilty to each of those charges and elected to be tried by a jury, which returned a verdict of guilty on each count. The defendant has appealed from the judgment rendered on the verdict.

The jury could reasonably have found the following facts: On October 25, 1978, at about 10 a.m., Officer John Zarbo received a radio broadcast that three or four black males were tampering with a motor vehicle opposite the railroad station on Union Avenue in New Haven. Zarbo and Officer Frank Cathey, seated in separate squad cars, responded. Zarbo, who reached the scene before Cathey, drove slowly down the street and observed a black male leaning up against a wall next to a red Plymouth, and a Puerto Rican male, whom he later identified as the defendant, inside the car. The defendant then ducked down and exited the vehicle by the passenger door. The suspects began running, ducking into a sidewalk leading into the "projects" known as Church Street South. The police pursued the suspects and, with the assistance of additional police officers, arrested them.

A search of the defendant's person upon arrest revealed a set of vice grips, a pair of gloves and a coat hanger. The defendant was warned of his constitutional rights, handcuffed, placed in the back

---

[3] General Statutes § 53a-125 provides in part: "(a) A person is guilty of larceny in the fourth degree when the value of the property or services is fifty dollars or less."

[4] General Statutes § 53a-167a provides in part: "(a) A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

of a police cruiser and transported back to the red Plymouth on Union Avenue. The police observed that the Plymouth's rear window had been smashed in and that its passenger door was unlocked. A tape cassette player, later identified as belonging to the owner of the Plymouth, was lying on the sidewalk next to the car and the wiring under the Plymouth's dashboard was ripped and frayed.

At this point Cathey attempted to talk to the defendant in the back seat of Zarbo's cruiser. When the defendant protested that he did not speak English, Cathey tried Spanish. The defendant soon became abusive and belligerent and began to thrash about, kicking Cathey in the legs. He was restrained and later transferred to the police wagon.

The defendant claims that the court's instructions to the jury on the element of intent violated his constitutional right to due process of law and to a fair trial under *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), and *State* v. *Harrison,* 178 Conn. 689, 425 A.2d 111 (1979). He claims that it is reasonably possible that the jury could have interpreted the instructions given as creating either (1) a conclusive presumption on the element of intent or, (2) a presumption that shifted to the defendant the burden of disproving criminal intent. Ordinarily, we would refuse to review error claimed in the instructions to the jury where, as here, no exception was taken in the trial court. Practice Book, 1978, § 3063. Because the error claimed falls within the "exceptional circumstance" rule of *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973), however, we will review the error despite the lack of objection

and exception below. See *State* v. *Arroyo,* 180 Conn. 171, 429 A.2d 457 (1980); *State* v. *Cook,* 174 Conn. 73, 75–76, 381 A.2d 563 (1977).

The precise statement from the court's instructions on intent to which the defendant objects and upon which he bases his appeal is: "The person is presumed to have intended to do the acts which he did do."[5] This language appeared in a general instruction on intent, the court having instructed later more specifically on the type of intent required for the crimes charged. In reviewing instructions to the jury the court looks to the charge as a whole, and will not sever one portion and analyze it in isolation from the rest. *State* v. *Harrison,* 178 Conn. 689, 693, 425 A.2d 111 (1979); *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); see *Cupp* v. *Naughton,* 414 U.S. 141, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973). In analyzing this type of claim in *Sandstrom* v. *Montana,* supra, the Supreme

[5] The paragraph of the instructions immediately preceding that which contained the statement objected to and the paragraph containing that statement follows: "I will be referring later on to intent because I will define it to you in connection with a couple of the statutes, but I will give you a general instruction at this point. Intent is sometimes an element of a criminal offense to be proved by the state, and it is in this case. Because intent can seldom be proven directly, because no one can look into a man's mind to determine his intent at any given time, it is proper and usually necessary to infer intent. That is to determine that [sic] a person intended by determining what his words and actions were at the particular time in question, and from those words and actions to infer or conclude what his intent or purpose was.

The person is presumed to have intended to do the acts which he did do. So I am not talking about a crime. I am talking about actions in this case. If an action happened, a person is presumed to have intended the action. So you may draw whatever inferences you find to be reasonable from the action. To draw inferences is not only the privilege but the duty of the jury, provided the inference is a reasonable one."

Court pointed out that careful attention must be given to the words actually spoken to the jury, "for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom* v. *Montana,* supra, 514.

In *Sandstrom,* the defendant was tried in the state court for murder. Although he admitted killing the victim, he defended on the ground that he lacked the mental capacity to have "purposely and knowingly" killed her and was, therefore, guilty of a lesser crime. He was, nevertheless, convicted of deliberate homicide. On certiorari to the United States Supreme Court, the petitioner challenged the constitutionality of the trial court's instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Sandstrom* v. *Montana,* 442 U.S. 510, 512, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). The Supreme Court held in a unanimous decision that the instruction was unconstitutional as violative of the due process clause of the fourteenth amendment, which places upon the state the burden of proving beyond a reasonable doubt every essential element of a criminal offense. This holding was premised on the court's conclusion that a reasonable juror could have interpreted the language objected to as creating a conclusive presumption,[6] which would conflict with the overriding presumption of innocence, and invade the fact-finding province of the jury; see *United States* v. *United States Gypsum Co.,* 438 U.S. 422, 435, 446, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978); *Morissette* v. *United States,* 342 U.S. 246,

---

[6] In *Sandstrom* the jury were not told that the presumption could be rebutted. *Sandstrom* v. *Montana,* 442 U.S. 510, 517, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979).

274–75, 72 S. Ct. 240, 96 L. Ed. 288 (1952); or as a presumption, which, although not conclusive, had the effect of shifting impermissibly the burden of persuasion to the defendant "to prove that he lacked the requisite mental state." *Sandstrom* v. *Montana,* supra, 524; see *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).

In *State* v. *Arroyo,* supra, which involved a *Sandstrom* claim, we cautioned against oversimplification of the court's holding in that case by stating: "*Sandstrom* does not invalidate the use of all inferences and presumptions with regard to criminal intent. To the contrary, the court took care to incorporate its analysis of inferences and presumptions in an opinion issued two weeks earlier; *Ulster County Court* v. *Allen,* 442 U.S. 140, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979); where it sanctioned the use of an 'entirely permissive inference or presumption, which allows—but does not require— the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant.' *Ulster County Court,* supra, 157. Clearly, the use of the word 'presumes' is not in and of itself what rendered the charge in *Sandstrom* invalid. It was the 'lack of qualifying instructions as to the legal effect of the presumption'; *Sandstrom,* supra, 46; in addition to the use of the word 'presumes,' which rendered it possible that a reasonable jury could have interpreted the instruction as either a conclusive or burden-shifting presumption, thereby depriving the defendant of his right to due process of law. Id." *State* v. *Arroyo,* supra, 175. The question presented by this appeal, then, is whether in light of the whole charge, a reasonable juror could have interpreted the language objected to as cre-

ating either a conclusive or a burden-shifting presumption, thereby depriving the defendant of his right to due process of law.

We have carefully examined the whole charge and have concluded that the defendant was not denied due process of law. Although the term "presumed" was not specifically defined by the trial judge,[7] the terms "infer" and "inference" were specifically and repeatedly explained in permissive terms. Just prior to giving that portion of the charge objected to, the court instructed the jury at length on circumstantial evidence, which it said was "an important factor in this case," and the inferences the jury could draw therefrom.[8] After the instruction relating to the presumption, the court stated: "So you *may* draw whatever inferences you find to be reasonable from the action. To draw inferences is not only the privilege but the duty of the jury, *provided the inference is a reasonable one.*" (Emphasis added.) Later in the charge on intent the court

[7] Our examination of the whole charge does not disclose that the term "presumption" was ever used other than in connection with the instruction on the presumption of innocence.

[8] The court stated, in part: "Intent, for example, is always a matter of inference and circumstantial evidence . . . . Basically here the state does not have direct evidence of what [happened]— and what you believe is for your own determination. I am not attempting to influence you, merely to explain what circumstantial evidence is.

"No one actually saw anything happening inside the car in question . . . . However, the state has offered into evidence a number of other surrounding circumstances which are for you to evaluate and choose whether to believe or not, and from that the state wants you to infer that the defendant committed the crime in question, broke into the car with an intent to take something and then fled based on that. So that there is circumstantial evidence for you to evaluate, and it is proper for you to consider direct and circumstantial evidence, so long as any inferences you draw are reasonable ones founded upon the facts."

stated: "Whether the criminal intent existed at the time of the commission of the alleged criminal act must of necessity be inferred and found from other facts which in their nature are the subject of specific proof, and for this reason, other constituents of the crime being proved, it will be left for you to determine from all the circumstances whether the criminal intent existed."[9]

With respect to the court's charge on burglary, the jury were informed that the state "wants you to infer" from certain facts the existence of criminal intent. A similar statement was made in the instructions on the element of intent in the crime of larceny, and the court there referred the jury to its earlier discussion of inferences and circumstantial evidence. In the instruction on the crime of possession of burglary tools, the court charged, in accordance with General Statutes § 53a-106, that such tools had to be possessed under circumstances "manifesting an intent to use or knowledge that someone intends to use them for the unlawful entry."[10]

Prior to the instruction to which the defendant objects, and near the beginning of the charge, the court instructed the jury thoroughly on the burden of proof. The court stated, in part: "The state has

[9] The court also stated in this regard: "In some cases the inference which must be based upon facts in evidence is irresistible and in others it may and often is a matter of great difficulty to determine whether the accused committed the act charged with criminal purpose; but there are usually found in connection with an act done, which is charged to be criminal, attending circumstances which characterize it, and if these are absent or circumstances proved are consistent with innocence, a conviction cannot be permitted."

[10] The court did not instruct the jury that any particular state of mind was required for the crime of interfering with a police officer and no claim of error is raised in this regard.

the *sole* burden of proof in this case. The defendant
is under no obligation to prove his innocence *or* to
disprove guilt. The state must have satisfied you
by the evidence produced in the trial beyond a rea-
sonable doubt that *each and every element* of the
particular statute involved was proven to your sat-
isfaction."[11] (Emphasis added.) The jury were
later told: "So the state has the burden of proof.
The defendant does not have the burden of proof."
This principle was fully explained and was reiter-
ated several times by the court. These instructions
certainly satisfied the requirement of the due proc-
ess clause of the fourteenth amendment that the
prosecution prove each and every element of the
crime charged beyond a reasonable doubt. *Patter-
son* v. *New York,* 432 U.S. 197, 97 S. Ct. 2319, 53
L. Ed. 2d 281 (1977); *Mullaney* v. *Wilbur,* 421 U.S.
684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).
Although general instructions on the burden of
proof or the presumption of innocence do not in and
of themselves dispel the possibility that the jury
could have interpreted the instruction on intent in
an unconstitutional manner; *Sandstrom* v. *Mon-
tana,* supra, n.7; such instructions may be consid-
ered with all other instructions relevant to the claim
raised to determine whether the jury could have
interpreted the presumption involved to be either
conclusive or burden-shifting and, thus, unconsti-
tutional.

The defendant claims that the court's instruc-
tions in *State* v. *Harrison,* 178 Conn. 689, 425
A.2d 111 (1979), are indistinguishable from those
given here and that, on the authority of *Harrison,*
we must find error. This claim is best answered

---

[11] The court had earlier instructed the jury that four statutes were
involved and later instructed the jury on each of these statutes.

by reference to the relevant portion of the *Harrison* charge. The trial court there stated: " 'The State does not have to offer evidence to prove that a man charged with a crime actually had a guilty intent. This is because a person is presumed to have intended to do the act which he did do. Accordingly, until some credible evidence comes into the case tending to prove that because in the light of the circumstances as he honestly and in good faith believed them to be, the act which he did would appear to be lawful, or because the act was an accident, until such credible evidence appears in the case, the State may rest upon the presumption that the accused intended to commit an act which he did commit. Until such evidence appears in the case, the jury must presume that the accused intended to commit such acts as the jury finds he did commit, and accordingly find that the requisite guilty intent was present if it is shown that the accused, [sic] done by the accused, was unlawful.' " *State* v. *Harrison*, supra, 692.

The instruction in *Harrison* clearly shifted to the defendant the burden of proof on the element of intent and directed the jury to find criminal intent from the actions proved unless the defendant satisfied his "burden of proof." In *Harrison*, we concluded that, although the trial court had "properly instructed the jury in a general way on the presumption of innocence and the burden of proof, as had the *Sandstrom* trial court, all of its instructions on the element of intent were together insufficiently precise to compensate for the great damage incurred by the harmful portion." *State* v. *Harrison*, supra, 697. There is no parallel with the instructions given here, for there is neither the great damage from the language of the charge

quoted above, nor the imprecision in the other instructions on the element of intent that existed in *Harrison*.

Our examination of the whole charge in this case leads us to the conclusion that the reasonable juror could not have interpreted the language to which the defendant objects as creating either a conclusive or a burden-shifting presumption on the element of intent. The reference to the presumption with regard to intent was brief and isolated. Cf. *State* v. *Harrison,* supra. The language that preceded and followed it provided the jury with ample "qualifying instructions as to the legal effect of the presumption." Cf. *Sandstrom* v. *Montana,* supra, 517. The jury were sufficiently informed by the instructions that any presumption on the element of intent was permissive and that no burden of any sort rested upon the defendant. See *Ulster County Court* v. *Allen,* 442 U.S. 140, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979). The defendant's rights under the due process clause were not violated.

There is no error.

In this opinion the other judges concurred.