STATE OF CONNECTICUT *v.* GEORGE E. TRUPPI

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued October 9—decision released December 16, 1980

*Suzanne Zitser Gottlieb,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Joette Katz Rubin,* assistant public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Walter D. Flanagan,* assistant state's attorney, for the appellee (state).

COTTER, C. J. After a trial to the jury the defendant was convicted on a four count information of the crimes of sexual assault in the first degree, General Statutes § 53a-70 (a) (2); assault in the first degree, General Statutes § 53a-59 (a) (1); robbery in the first degree, General Statutes § 53a-134 (a) (1); and kidnapping in the second degree, General Statutes § 53a-94 (a). The court imposed separate sentences under each count, to run consecutively. The defendant claims error in an instruction on intent and in the consecutive sentences for assault and robbery.

The jury could reasonably have found the following facts. Early in the morning of December 3, 1977, the defendant came up behind the female victim as she was putting the key into the backdoor of her house in Bridgeport; put a gun to her head; and told her that he needed a driver. Thereupon, he pushed her into his car and told her to drive. While she drove his automobile he pointed the gun at her head. After some time he ordered her to stop, get out of the car, and accompany him to a wooded area of the Brooklawn Country Club golf course in Fairfield. Then he ordered her to remove all her clothing and sexually assaulted her. Thereafter he told her to turn on her stomach and he began searching her pocketbook. Suddenly she felt

a thud on her back, turned over, began to fight back, felt a cut in her arm, and blacked out. The defendant stabbed her fourteen times and took $200 from her wallet. The foregoing events occurred during the span of approximately an hour and a half.

## I

The defendant claims that the court's instructions to the jury violated his constitutional right to due process by shifting to him the burden of proof of intent, contrary to the holdings in *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), *State* v. *Arroyo*, 180 Conn. 171, 429 A.2d 457 (1980), and *State* v. *Harrison*, 178 Conn. 689, 425 A.2d 111 (1979).

Before instructing the jury regarding the elements of the four crimes with which the defendant was charged and the specific criminal intents required for assault in the first degree, robbery in the first degree, and kidnapping in the second degree, the court gave the following instruction which the defendant claims unconstitutionally shifted the burden of proof to him. "Now, in the usual case, the State of Connecticut does not have to offer evidence to prove that a man charged with a crime actually had a guilty intent or guilty knowledge. This is because a man is presumed to have intended to do the acts which he did do. Accordingly, until some credible evidence comes into the case tending to prove that, because in the light of the circumstances as he honestly and in good faith believe (sic) them to be, the act which he did would appear to be lawful or because the act was an accident, the State may safely rely upon the presumption that the accused intended to commit the acts which he did commit. Until such evidence

appears in the case, the jury must presume that the accused intended to commit such acts as the jury may find that he did commit and accordingly find that the requisite guilty intent was present if as a matter of fact it is shown that the acts done by the accused were in fact unlawful." [1]

*Sandstrom* held that in a case where intent is an element of the crime charged, instructions which a reasonable jury could believe required them to apply a burden-of-persuasion-shifting or conclusive presumption "that a person intends the ordinary consequences of his voluntary acts" violate a defendant's right to due process of law. *Sandstrom,* supra, 512, 515, 517. Unlike the instruction in *Sandstrom,* the foregoing instruction explicitly stated that the presumption would vanish when some credible contrary evidence came into the case. Hence, reasonable jurors could not have viewed this instruction as conclusive respecting the element of intent. In addition, the challenged passage concerned intent to do the act[2] committed, not intent to effect "the ordinary consequences of his voluntary acts." *Sandstrom,* supra, 513.

---

[1] We do not understand how the dissent can claim that this instruction is not cast in terms of a presumption. The placement of this general instruction before the instructions relating to the crimes charged in the information indicated to the jury that this instruction applied whenever the later instructions mentioned intent.

[2] Because this passage used the term "act" ambiguously, reasonable jurors could have attributed any one of at least three meanings to the word: (1) any bodily movement; (2) a muscular movement willed by the actor; and (3) the consequences or results of the movement. See Cook, "Act, Intention, and Motive in the Criminal Law," 26 Yale L.J. 645, 647 (1917). The Model Penal Code, § 1.13 (2), adopts the first definition of the term "act." Mr. Justice Holmes limited the definition of an "act" to the second meaning. The Common Law, 91. See also Perkins, "A Rationale of Mens Rea," 52 Harv. L. Rev. 905, 912 (1939). Our penal code does not define the term. If the jurors chose the Model Penal Code's terminology,

## II

The trial court avoided the "ambiguous and elastic" terms "intent"[3] and "act" in the unchallenged portion of the instructions specifically

the instruction told them to presume that the acts were voluntary. *People* v. *Blum,* 72 App. Div. 2d 691, 421 N.Y.S.2d 359 (1st Dept. 1979). If Justice Holmes' definition prevailed, the challenged presumption was a mere tautology. If the jury applied the third definition, the instruction approximated the "consequences" language from *Sandstrom.*

[3] Certain discussions in our decisions have equated "general intent" with the concept that the law usually punishes only voluntary acts. See, e.g., *State* v. *Roy,* 173 Conn. 35, 45, 376 A.2d 391 (1977).

"[W]here the definition of a crime requires some forbidden act by the defendant, his bodily movement, to qualify as an act, must be voluntary. To some extent, then, all crimes of affirmative action require something in the way of a mental element—at least an intention to make the bodily movement which constitutes the act which the crime requires. . . . [S]ome of the broad defenses to criminal liability (especially insanity, infancy, and involuntary intoxication) operate, when applicable, to relieve the actor from liability because these conditions negative his mental capacity to commit any crime. These notions are sometimes summed up with the expression that all crimes require a 'general intent,' . . . ." LaFave & Scott, Criminal Law (1972) § 28, p. 201. "The unadorned word 'fault' is . . . a more accurate word to describe what crimes generally require in addition to their physical elements." Id., § 27, p. 192. Certainly punishment without fault conflicts with the principles of Anglo-American criminal jurisprudence except for a small class of regulatory offenses. *Dennis* v. *United States,* 341 U.S. 494, 500, 71 S. Ct. 857, 95 L. Ed. 1137 (1951); Perkins, "A Rationale of Mens Rea," 52 Harv. L. Rev. 905, 906 (1939). The venerable common-law distinction between "general intent" and "specific intent" crimes has, however, resulted in much confusion. *United States* v. *Bailey,* 444 U.S. 394, 403, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980). "This ambiguity has led to a movement away from the traditional dichotomy of intent and toward an alternative analysis of mens rea . . . [which replaces] the ambiguous and elastic term 'intent' . . . with a 'hierachy of culpable states of mind.' " Id., 403–404; see Model Penal Code § 2.02; General Statutes § 53a-3 (11)–(14).

related to sexual assault in the first degree.[4] Thus the general instructions were in no way incorporated by reference into those instructions. Consequently the jury would not have applied the challenged passage in arriving at their verdict on sexual assault. In such an event even patent *Sandstrom* error would be harmless. *Smith* v. *State,* 244 Ga. 814, 821, 262 S.E.2d 116 (1979); *State* v. *Sunday,* 609 P.2d 1188 (Mont. 1980); see also *Krzeminski* v. *Perini,* 614 F.2d 121, 126 (6th Cir. 1980). Because the defendant does not challenge the remainder of the court's charge on sexual assault, we assume that it was adequate and legally correct. *Katsetos* v. *Nolan,* 170 Conn. 637, 658, 368 A.2d 172 (1976); *State* v. *LaBreck,* 159 Conn. 346, 348, 269 A.2d 74 (1970). Moreover the defendant failed to make the proper objections and exceptions to the portions of the court's charge he now claims were erroneous.

"Only the most exceptional circumstances will save a claim, constitutional or otherwise, from the fatal consequences of a defendant's failure to make a timely objection." *State* v. *Baker,* 182 Conn. 52, 56, 437 A.2d 843 (1980); *State* v. *Arroyo,* 180 Conn. 171, 429 A.2d 457 (1980); *State* v. *Briggs,* 179 Conn. 328, 332, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

Under these circumstances we decline to exercise the discretion, provided in Practice Book, 1978,

[4] "[General Statutes] Sec. 53a-70. . . . (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse . . . (2) by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person." This statute designates no special mental state.

§ 315, to review the defendant's belated claim of error as it relates to his conviction for sexual assault.

### III

Unlike the instructions given on sexual assault, the instructions specifically relating to the three remaining crimes, each of which required proof of a specific intent, incorporated the court's general instruction on intent. Because a reasonable jury may have believed that the "requisite guilty intent" referred to the specific intent required in each of the three remaining crimes charged in the information, we follow our past practice in reviewing post-trial *Sandstrom* claims relating to narrow classes of crimes requiring heightened culpability. *State* v. *Vasquez,* 182 Conn. 242, 245–46, 438 A.2d 424 (1980); *State* v. *Maselli,* 182 Conn. 66, 75, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Arroyo,* supra; see *United States* v. *Bailey,* 444 U.S. 403, 405, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980).

An "entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant, . . . [does not violate due process unless] there is no rational way the trier could make the connection permitted by the inference." *Ulster County Court* v. *Allen,* 442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979); *Arroyo,* supra, 175.

Unless cured, however, the portion of the instruction quoted by the defendant may have had an impact on the defendant's remaining convictions similar to the instruction in *Harrison,* supra, which

"clearly shifted to the defendant the burden of proof on the element of intent and directed the jury to find criminal intent from the actions proved unless the defendant satisfied his 'burden of proof.' " *Vasquez,* supra, 252. In effect, this portion indicated to the jury that they could convict the defendant without evidence that the defendant actually had a guilty intent. Thus, the explicit burden-shifting clause made this portion of the instruction more offensive in some respects than *Sandstrom. Harrison,* supra, 696. Its rebuttable character and the absence of explicit "consequences" language, however, render it less egregious in other ways. Nevertheless, if the jury received no other instruction on intent, they reasonably may have thought that the presumption was mandatory. In an effort to comply with that understanding they may have applied a rebuttable and burden-shifting presumption to find the specific intent necessary for each of the defendant's convictions on those counts.

Neither *Sandstrom* nor *Ulster County Court* v. *Allen* closely scrutinized mandatory rebuttable presumptions. *Allen,* however, indicated that it may be proper to analyze a mandatory rebuttable presumption as a permissible inference if it merely imposes on the defendant an extremely low burden of production which can be satisfied by "any" evidence. *Allen,* supra, 157–58 n.16. In this case the low burden of producing "some credible evidence" would have satisfied the defendant's burden of production. The defendant, however, neither took the stand, offered any witnesses, nor suggested a theory of defense in cross-examination or otherwise. Thus, unless the state introduced credible evidence which rebutted the presumed intent, the jury could have concluded that it must find against the defendant on

the issue of intent even though the state had not otherwise proven intent beyond a reasonable doubt. Such an interpretation would have violated the defendant's due process rights by eliminating the jury's role in weighing the evidence of intent; *Morissette* v. *United States,* 342 U.S. 246, 274, 72 S. Ct. 240, 96 L. Ed. 288 (1952); and freeing the state from the "beyond a reasonable doubt" standard mandated by the constitution. *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

In deciding whether a reasonable jury could have reached such a conclusion we must look at the charge as a whole, and not sever one portion and analyze it in isolation. *Vasquez,* supra, 246; *Harrison,* supra, 693; *State* v. *Harden,* 175 Conn. 315, 322, 398 A.2d 1169 (1978); see also *Cupp* v. *Naughten,* 414 U.S. 141, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973). "[I]solated improper comments by the trial judge do not compel reversal if the instruction is otherwise correct and nonprejudicial." *United States* v. *Guillette,* 547 F.2d 743, 750 (2d Cir. 1976), cert. denied, 434 U.S. 839, 98 S. Ct. 132, 54 L. Ed. 2d 102 (1977). Instructions which "clearly delineate the state's burden of proof on every element, including intent"; *Arroyo,* supra, 176; act to overcome any potential confusion engendered by the portion of the instructions challenged by the defendant. *Maselli,* supra, 75–76; *Arroyo,* supra, 175–76; *Harrison,* supra, 696–97.

We therefore pay "careful attention to the words actually spoken to the jury . . . for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom,* supra, 514. The word "presume" does not in

itself render a charge invalid. *Arroyo,* supra, 175; see *Vasquez,* supra; *Maselli,* supra, 76. But a single statement that "intent may be inferred from conduct" will not overcome an otherwise conclusive and burden-shifting instruction. *Arroyo,* supra, 181. Nor will general instructions to the jury, that the defendant is innocent until proven guilty and that the state bears the burden of proving the crime beyond a reasonable doubt, in and of themselves, instruct jurors how they may constitutionally use a presumption which unless clarified would fail the *Sandstrom* test. *Sandstrom,* supra, 518–19 n.7; *Arroyo,* supra, 175; *Harrison,* supra, 697. "[S]uch instructions, [however,] may be considered with all other instructions relevant to the claim raised to determine whether the jury could have interpreted the presumption involved to be either conclusive or burden-shifting and, thus, unconstitutional." *Vasquez,* supra, 251.[5]

In the present case the court began by instructing the jury that they were the sole judges of the facts and of the sufficiency of the facts to demonstrate the guilt of the accused. They were told that while the court might point out the legal effect of certain facts or evidence, or suggest certain considerations which the jury should bear in mind in considering the evidence, or make comments concerning the weight of evidence or regarding the propriety of finding certain facts from that evidence, such comments would be merely suggestive for the jury to approve or disapprove in the exercise of their sound judgment. They were instructed that they should make the proper deductions or inferences from the

---

[5] Contrary to the implication of the dissenting opinion, merely defining the word "intent" does not cure an erroneous instruction that the jury must presume intent or may do so without evidence.

evidence but that they should draw no presumption or inference of any kind against the defendant because he did not testify. The court reminded the jury that the defendant had no burden arising from his position as the accused and had no obligation to go forward with evidence to defend himself, and that it would not be sufficient for the state to make out a case of probable guilt and then call upon the defendant to refute it. Clearly these instructions contradicted the instruction that "the jury must presume" and thus tended to reduce the harm which might have occurred because of that language.

Assault in the first degree,[6] robbery in the first degree,[7] and kidnapping in the second degree[8] each require a distinct specific criminal intent. After giving the jury the instructions mentioned earlier and other general instructions, the court instructed them regarding the specific intent required by the statutory definitions.

---

[6] General Statutes § 53a-59 (a) (1), which defines the crime of assault in the first degree, requires "intent to cause serious physical injury to another person . . . ."

[7] General Statutes § 53a-134 (a) (1) defines the crime of robbery in the first degree in terms of robbery, which is defined in § 53a-133. Section 53a-133 states: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." In addition, robbery incorporates the "intent to deprive another of property or to appropriate the same to himself or a third person" required for larceny by § 53a-119.

[8] General Statutes § 53a-94 (a), which defines the crime of kidnapping in the second degree, uses the term "abducts." Section 53a-91 (2) defines "abduct" to mean "to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use physical force or intimidation."

## A

The instructions which were directed specifically to the crime of assault[9] prohibited finding the statutory intent if any reasonable explanation consistent with innocence remained in the jury's mind. The jury were thus informed that the defendant did not have the burden of explaining why the act occurred but rather that they must search their minds for any reasonable explanation which might exist. Furthermore the instructions directed the jury that they should infer intent to cause serious physical injury from the facts and circumstances only if they were satisfied of it beyond a reasonable doubt. Thus, all of the instructions on the element of intent needed for an assault in the first degree,

---

[9] While discussing assault in the first degree the court stated: "Under our law, a person is guilty of assault in the first degree when, with intent to cause serious physical injury to another person, he causes such injury to such person by means of a dangerous weapon. The specific intent to harm is the basic requirement of a criminal assault. This simply means that the defendant Truppi must have acted consciously, with the objective of causing serious physical injury to the person named in the information, namely [the victim]. Absent this essential element of the crime, the defendant Truppi cannot be found guilty. And please remember that each essential element of the crime must be proved by the State beyond a reasonable doubt. . . . Now, this statute requires a specific intent. That is, a crime of assault in the first degree. Now, whether or not a person, in doing so or in committing some act, did so consciously and with a specific objective, causing a serious physical injury to another person or persons, is an issue which you must determine from the surrounding circumstances as you may in the exercise of your best judgment find them to be. You cannot look into a person's mind and ordinarily the only way that we have of determining a person's intent or his intention, in this case the intent to harm, is by circumstantial evidence. Now, there's a difference between direct evidence and circumstantial evidence. Direct evidence is what someone saw, what he heard, what he knows, what he testifies to directly as to his visual observations or within something he heard. That's direct evidence. Circumstantial evidence is

when taken together cured any possibility of prejudice or harm from that portion of the charge relied upon by the defendant as erroneous because the court directed the jury with sufficient precision; *Vasquez,* supra, 252–53; *Harrison,* supra, 697; that any presumption on the element of intent was merely permissive, and imposed no burden of any kind on the defendant.

Accordingly, reasonable jurors following those instructions would have weighed every fact and circumstance presented by the evidence when they determined that the defendant acted with intent to cause serious physical injury. Therefore, they would not have based such a conclusion on an isolated fact. See *Sandstrom,* supra, 522; *Morissette* v. *United States,* supra, 275. Nor would

circumstances of facts, circumstances of pieces of evidence which, when you put together, lead to some reasonable inference that some other fact exists. And that's what we call circumstantial evidence. Specific intent therefore need not be proved by direct evidence, but may be inferred from the facts and the circumstances as you find them to be. You should infer such intent only if you are satisfied of it beyond a reasonable doubt. If there remains in your mind any reasonable explanation consistent with the innocence of this defendant George E. Truppi, then you cannot find that specific intent exists, or if the facts and circumstances satisfies you beyond a reasonable doubt that he did have such a specific intent, that is the intent to commit an assault in the first degree, it's your duty to infer its existence and to find that it has been proven. In summation, then, the State must prove beyond a reasonable doubt, that these three elements exist in order to justify a conviction of assault in the first degree. First, that the defendant Truppi caused serious physical injury to another person, that is [the victim], by means of a dangerous weapon; secondly, that he did so with a specific intent to cause such injury to such person or persons; third, that his identity as the assailant has been proven by the State beyond a reasonable doubt. If the State has failed to fulfill its obligation of proving these elements of the crime beyond a reasonable doubt, you must find the defendant Truppi not guilty. Proof of only one of the elements of the crime charged is not sufficient to support a conviction."

they have interpreted the instructions as requiring the defendant to prove that he lacked the statutory intent, after the state proved he repeatedly stabbed the victim and proved "additional facts not themselves establishing the element of intent," beyond a reasonable doubt. See *Sandstrom,* supra, 524. They would also not have believed that a presumption which did not accord with their best judgment could satisfy the standard of proof beyond a reasonable doubt. See *Allen,* supra, 159.

Since an inference of intent to cause serious physical injury from proof of the circumstances of a multiple stabbing accords with reason, it did not offend due process to inform the jury that the law permitted them to so infer. *Allen,* supra, 157.

## B

The court's instructions on robbery in the first degree[10] and kidnapping in the second degree[11] lack the precision and comprehensiveness of those given

---

[10] With regard to robbery in the first degree the court charged as follows on the element of intent. "[T]he fifth element is that he acted intentionally in committing the crime of robbery. Now, the words of this statute are ordinary common English words. They should be given their ordinarily understood meaning insofar as you are concerned. The statute itself defines the meaning of the word robbery as follows: 'A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of preventing or overcoming resistance to the taking of property or to the retention thereof immediately after the taking.' The word 'larceny' is also defined by the statute as follows: 'A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from the rightful owner.' A person acts intentionally with respect to a result or conduct described by a statute defining an offense, when his conscious objective is to cause such result or to engage in such conduct. Now, applying this statute and the definitions upon which you have been instructed, if you find that on December 3rd, 1977, at or about 5:30 in a wooded area in the vicinity of Cornell Road in Fairfield, the defendant

on the crime of assault. The court gave no further explanatory instructions on how to determine intent and did not refer to its instructions on intent as an element of assault in the first degree. Therefore we will not assume that the jury considered the instructions on intent as an element of assault in conjunction with the court's general instructions on intent when deliberating on robbery and kidnapping.

Truppi did intentionally take $200 in U.S. currency from the possession of [the victim], and which was owned by her, and with the intent to appropriate the money to himself or for the benefit of another person, that is his common-law wife, [there was evidence at the trial that the defendant gave the $200 to the woman with whom he was living] and if you further find that in the course of the commission of the crime he intentionally inflicted upon [the victim] injuries with a knife, consisting of 14 stab wounds, which created a substantial risk of the death of [the victim], or which caused her serious disfigurement or serious impairment of health or serious loss or impairment of the function of any bodily organ, you may find him guilty of robbery in the first degree. On the other hand, if you find that the defendant Truppi has not been identified as the perpetrator beyond a reasonable doubt, or that he did not intentionally rob her of her money, or that he did not inflict upon her the wounds which you find she may have received, then you cannot classify the injuries as serious physical injuries, and which created a substantial risk of death, you must of course then find the defendant not guilty of the crime of robbery in the first degree."

[11] In the course of instructing the jury on the crime of kidnapping in the second degree the court said: "To abduct means to restrain a person with intent to prevent her liberation by using or threatening the use of physical force. A person acts intentionally under our law with respect to a result or to conduct described by the statute defining this offense, when its conscious objective is to cause such result or to engage in such conduct. Applying this statute, and the definitions I have given you, if you find from the evidence produced in court, beyond a reasonable doubt, that George E. Truppi did intentionally on December 3rd, 1977, at or about 4:30 A.M., abduct [the victim] from the back door of her home on Wood Avenue at gunpoint, and that with intent to interfere substantially with her freedom of movement by compelling her to drive his car from place to place to a point somewhere near or on the premises of the Brooklawn Country Club, and that he threatened and intimidated her with the use of physical force during the time of such abduction with the use of a .44 caliber magnum pistol, you can find him guilty of the crime of kidnapping in the second degree."

*Arroyo,* supra, 181. Since a reasonable jury may have believed that they were permitted to find "the requisite guilty intent" even if the state offered no evidence on intent or that they were required to presume that the requisite guilty specific intents were present unless the defendant introduced some evidence to the contrary, the instructions on these counts were constitutionally impermissible. *Arroyo,* supra, 181; *Harrison,* supra.

## IV

The state urges that even if the instructions could have led a reasonable jury to shift the burden of proof to the defendant or to find intent on a lower standard than "beyond a reasonable doubt" such error would be harmless because of the overwhelming evidence of the defendant's guilt.

Ordinarily the burden of establishing that harm resulted from a trial court error rests on the appellant. *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 418 (1980); *State* v. *Ruth,* 181 Conn. 187, 197, 435 A.2d 3 (1980); *State* v. *Pepe,* 176 Conn. 75, 81, 405 A.2d 51 (1978). However, "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman* v. *California,* 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). If error touches a less basic constitutional right, we sometimes apply the "harmless error" exception, but only sparingly, in a few, discrete circumstances. *State* v. *Zeko,* 177 Conn. 545, 558, 418 A.2d 917 (1979). In such circumstances we require the state to prove the error harmless beyond a reasonable doubt. *State* v.

*Sorbo,* 174 Conn. 253, 257, 386 A.2d 221 (1978); *Aillon* v. *State,* 168 Conn. 541, 547–48, 363 A.2d 49 (1975).

When a court commits constitutional error by admitting evidence of a defendant's post-*Miranda* warning silence to rebut a claim of post-arrest communication with the police, we consider and weigh overwhelming evidence of guilt in determining whether the state has proven "harmlessness" beyond a reasonable doubt. *State* v. *Briggs,* supra, 336–37; *Zeko,* supra, 557. In such a case, however, the error does not significantly impair the truth finding function of the trial.

Since the defendant's jury reasonably could have relied on a "no evidence" standard in determining intent for kidnapping and robbery they may reasonably have failed to consider the evidence, which the state urges us to find overwhelming. That possibility is incompatible with both the societal interest in the reliability of these jury verdicts; see *Mullaney* v. *Wilbur,* 421 U.S. 684, 699, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); and the protection which a jury determination of guilt by the "beyond a reasonable doubt" standard should guarantee to the defendant. Therefore we decline to weigh the evidence of guilt against the uncured damage done by the harmful portion of the instructions.[12] To do otherwise would transfer to this "court the jury's function of measuring the evidence by appropriate legal yardsticks." *Bollenbach* v. *United States,* 326 U.S. 607, 614, 66 S. Ct. 402, 90 L. Ed. 350 (1946). Therefore we reverse the convictions for robbery and kidnapping.

[12] Contra, *People* v. *Wright,* 408 Mich. 1, 289 N.W.2d 1 (1980); *State* v. *Hamilton,* 605 P.2d 1121 (Mont.), cert. denied, 447 U.S. 924, 100 S. Ct. 3017, 65 L. Ed. 2d 1117 (1980).

## V

The defendant also claims that the consecutive sentences he received upon his convictions for assault in the first degree, General Statutes § 53a-59 (a) (1), and robbery in the first degree, General Statutes § 53a-134 (a) (1), violate the constitutional provision against double jeopardy. We examine this claim because it would affect a retrial for robbery. The fifth amendment provides in pertinent part "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. This clause applies to the states through the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The double jeopardy prohibition covers not only separate trials but also multiple punishments for the same offense in a single trial. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). "The legislature remains free . . . to define crimes and fix punishments," but once it has acted courts may not exceed their "legislative authorization by imposing multiple punishments for the same offense." Id; see also *Whalen* v. *United States,* 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980).

"Before the double jeopardy prohibition is triggered, however, it must appear not only that the crimes charged arose out of the same act or transaction but also that they are substantially the same." *State* v. *Amaral,* 179 Conn. 239, 242, 425 A.2d 1293 (1979). The United States Supreme Court applies the *"Blockburger"* test to determine whether a defendant, by violating two distinct statutory provisions in one act or transaction,

committed "two offenses which are sufficiently distinguishable to permit the imposition of cumulative punishment." *Brown* v. *Ohio,* supra, 166. If "each provision requires proof of an additional fact which the other does not" both offenses may be punished. *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). In applying *Blockburger,* we look to the information and the bill of particulars. *Amaral,* supra, 10. Thus, we do not speculate about uncharged violations which might require proof of an additional fact which the other does not. Nor do we examine the evidence to determine how a defendant actually violated the statutes. See *Illinois* v. *Vitale,* 447 U.S. 410, 416n, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980). In the information, the state's attorney accused the defendant of assault in the first degree and charged that the defendant "with intent to cause serious physical injury . . . did cause serious physical injury . . . with a dangerous instrument, to wit: a knife." The state's attorney further accused the defendant in the same information of robbery in the first degree and charged that the defendant "stole certain property . . . and in the course of the commission of the crime did cause serious physical injury."

Each of these crimes as charged in the information required proof of an additional fact or facts which the other did not. Robbery in the first degree required proof of the additional element of larceny, while assault in the first degree required proof that the defendant used a knife with "intent to cause serious physical injury." Thus, the defendant's offenses are distinct, permitting the state to impose separate punishments.

There is error in part. There is no error and the judgment is affirmed as to the second and third counts charging sexual assault in the first degree and assault in the first degree; there is error as regards the first and fourth counts of the information, charging kidnapping in the second degree and robbery in the first degree respectively, and as to those counts only, the judgment is set aside and a new trial is ordered.

In this opinion PETERS, HEALEY and PARSKEY, Js., concurred.

BOGDANSKI, J. (dissenting). The court's instructions on robbery in the first degree and kidnapping in the second degree are valid under the *Arroyo* framework. *State* v. *Arroyo,* 180 Conn. 171, 429 A.2d 457 (1980).

The court's charges on these crimes do not possess the potential for conclusiveness or burden-shifting that was present in *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), or *State* v. *Harrison,* 178 Conn. 689, 425 A.2d 111 (1979). In fact, the attacked instructions are not cast in terms of a presumption at all. They merely say that, "[a] person acts intentionally under our law with respect to a result or to conduct described by the statute defining this offense, when its conscious objective is to cause such result or to engage in such conduct." The court then instructed the jury to apply this definition of the word intent in their deliberations. This instruction on intent could not be reasonably construed to require a conclusive presumption or a shifting of the burden of proof. It overcame any conclusive and burden-shifting effect of the earlier instruction.

The court, at the start of its instructions, gave the impermissible *Sandstrom* charge. It gave further instructions on intent for the robbery and kidnapping charges. At the time of giving the robbery and kidnapping charges it did not refer to its earlier impermissible instructions. Therefore, we should not assume that the jury considered the *Sandstrom* instruction in conjunction with the robbery and kidnapping charges. *Arroyo,* supra, 181.

I would affirm the convictions.