STATE OF CONNECTICUT *v.* MELVIN BROKAW

COTTER, C. J., BOGDANSKI, PETERS, PARSKEY and DALY, Js.

Argued November 5, 1980—decision released January 27, 1981

*Jerrold H. Barnett,* public defender, with whom, on the brief, were *Joette Katz Rubin* and *Richard L. Shiffrin,* assistant public defenders, for the appellant (defendant).

---

[7] Since we find error, we need not address the defendant's other claims.

*Richard A. Schatz,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

PARSKEY, J. The defendant has appealed his conviction of attempted assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1)[1] rendered pursuant to a jury verdict of guilty. On appeal he raises two claims of error: (1) the admission into evidence of certain hearsay statements and (2) the jury instructions which improperly shifted the burden of proof on the element of intent.

The jury could have reasonably found the following facts from the evidence produced at trial: Several members of the Southington police department sought to apprehend the defendant on October 18, 1976. Detective Sterling Porter, dressed in plainclothes, approached the defendant as he was sitting in a restaurant. Porter identified himself and confronted the defendant with his service revolver drawn. A short time later Officer Richard Bohlman, Porter's partner, also dressed in plainclothes, entered the restaurant. At that point the defendant darted out of the restaurant and fled afoot with Porter, Bohlman and several other members of the Southington police department giving chase, also on foot. Bohlman fired two warning shots as the defendant crossed the road in front of the restaurant, whereupon the defendant, then seventy-five feet away from the officers, turned around and fired

[1] General Statutes § 53a-59 (a) (1) provides that "[a] person is guilty of assault in the first degree when: (1) with intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

a shot from a handgun in the direction of the pursuing officers. The shot did not hit the officers; the chase continued. When the officers were trailing the defendant by approximately 150 feet, the defendant fired two shots in the direction of the officers. The defendant then ran through a corral and disappeared from the officer's view when he ran to a wooded mountainous area on the other side of the corral. During the chase the police officers fired a total of approximately twenty-five shots.

The first claim of error attacks the admission into evidence, on two occasions, of statements that the defendant now contends were hearsay. The initial statement occurred as part of Porter's testimony while he was being cross-examined by defense counsel. After establishing that, during the restaurant confrontation between the defendant and Porter, several other officers who were stationed outside the restaurant were available to assist Porter, the defendant's attorney posed a series of questions[2] that ultimately elicited a response to the effect that, on the basis of information supplied by

---

[2] The full colloquy transpired as follows:

"Q. [By the defendant's attorney, Fred H. White] And what did you do? You called — you told the barmaid to call the police?

A. [By Detective Sterling Porter] Yes, sir.

Q. On the phone?

A. Yes, sir.

Q. Why didn't you yell out the door and call them all in?

A. Because my partner was to come into the establishment at a prescribed time, which was at that second. I believed that his life was in danger, and I figured if we could notify the police department and they could notify the cars by radio, it could eliminate any possibility of him being in a hazardous situation.

Q. How did you figure his life was in danger when you have everybody under gunpoint and you hadn't seen any weapons?

A. I figured his life was in danger because we have had information—

Mr. White: I object.

other police departments, Porter felt that his partner's life would be in danger because the defendant carried weapons on his person and had said he would not be taken again and that he would shoot it out with the police if he had to.

The defendant maintains that Porter's response was inadmissible hearsay that should have been excluded from evidence by the trial court. We take a different view because the answer given by the witness was clearly responsive to the question posed. Having invited the witness to explain "how it was" that he felt the situation was dangerous, the defendant cannot now complain that the response, to the extent it was offered for the truth of the matter asserted, consisted of hearsay. The defendant concedes, as he must, that the evidence would not be hearsay if offered to show Porter's state of mind. See McCormick, Evidence (2d Ed.) § 249. That Porter's state of mind was not necessarily at issue in the case makes no difference because the question framed by counsel sought to elicit that very infor-

Mr. Schatz: [The prosecutor]: I think he should be permitted to answer the question, and I object to his being cut off, if your Honor please.

Mr. White: He is not going to start saying information which is not verified, if your Honor please; and he knows better. Could we go back to the question, then, please.

(Question read by the reporter.)

The Court: The question may be answered—it may be completed.

A. (Continuing.) Okay. The reason why I felt why my partner's life could be in jeopardy is because we have had information given to us by other police departments that Melvin Brokaw has carried weapons on his person, that he has also said he wouldn't be taken again, and that he'll shoot it out with the police if he had to.

Mr. White: I ask that be—that now be stricken.

Mr. Schatz: I claim it.

Mr. White: It's not responsive. It's prejudiced. It's not based on fact and again, a figment of this man's imagination.

Mr. Schatz: Well, the last is improper.

The Court: Motion to strike is denied."

mation. So long as the answer is clearly responsive to the question asked, the questioner may not later secure a reversal on the basis of any invited error. *State* v. *Maggard,* 104 Ariz. 462, 464–65, 455 P.2d 259 (1969); *People* v. *Vincent,* 34 App. Div. 2d 705, 706, 309 N.Y.S.2d 690 (1970). See generally Maltbie, Conn. App. Proc. § 40. The trial court correctly allowed the witness to complete his answer.

The second ruling on evidence pursued by the defendant on appeal concerns a later repetition of the information contained in Porter's answer by another police officer who testified at the trial. Because this later evidence did not add anything to the previous Porter testimony, the defendant gains nothing by this claim; the evidence was merely cumulative. See *State* v. *Vennard,* 159 Conn. 385, 393, 270 A.2d 837 (1970), cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1971).

The only remaining claim of error focuses on the trial court's instructions to the jury on the element of intent.[3] Relying on such cases as *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), and *State* v. *Harrison,* 178 Conn. 689,

---

[3] The court instructed the jury as follows:

"Now you may draw inferences from the established facts in the case. The inferences which you draw, however, must not be from a guess or speculation upon the evidence or a surmise upon the evidence, but it must be from a fact which the evidence has established; and, of course, you understand that the evidence includes all of the exhibits in the case.

Inferences that you may draw from these established facts must be logical and reasonable, well founded upon facts which have been proven in the trial of the case. You may infer that a person ordinarily intends the natural and probable consequences of his acts.

\*    \*    \*    \*    \*

To sustain a finding of guilty upon this first part of the statute pertaining to the crime of attempted assault in the first degree, you must find not only that the defendant attempted to cause serious

429 A.2d 111 (1979), the defendant argues that the instructions given impermissibly shifted the burden of proof on intent. The charge to the jury did not offend *Sandstrom* because it was cast entirely in terms of permissive inferences which could be drawn rather than mandatory conclusive presumptions. On this basis, the charge in the present case is easily distinguished from the charge disapproved of in *Harrison,* supra, 692. Moreover, the present charge is significantly less onerous than the charge approved in *State* v. *Arroyo,* 180 Conn. 171, 179–80, 429 A.2d 457 (1980). Because the present instructions did not shift the burden of proof on the element of intent from the state to the defendant, the trial court did not commit error in charging the jury.

There is no error.

In this opinion the other judges concurred.

---

physical injury to another person by means of a deadly weapon, but also that he had the specific intent to cause such injury to such person or a third person.

The existence in the mind of the defendant of this intent is a necessary element to constitute the crime. A person acts intentionally with respect to a result or conduct involved in an offense when his conscious objective is to cause such result or to engage in such conduct.

Such intent need not be proved by direct evidence, but may be reasonably inferred from all the facts and circumstances. You should infer such intent only if you are satisfied of it beyond a reasonable doubt. If there remains in your mind, after considering all the facts and circumstances that you may find proven any reasonable explanation consistent with the innocence of the defendant, then you cannot find the intent to exist, but if the facts and circumstances satisfy you beyond a reasonable doubt that the defendant did have such an intent, it is your duty to infer its existence and to find it proven."