STATE OF CONNECTICUT *v.* WILLIAM C. COSGROVE

SPEZIALE, C. J., HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued January 13—decision released March 16, 1982

*Charles D. Gill,* public defender, with whom were *John L. Carbonneau, Jr.,* and, on the brief, *Susan Leslie,* legal intern, for the appellant (defendant).

*Carl J. Schuman,* assistant state's attorney, with whom, on the brief, were *Dennis A. Santore,* state's attorney, *Richard E. Maloney,* deputy chief state's attorney, and *Elizabeth Palmer,* legal intern, for the appellee (state).

SHEA, J. The jury found the defendant guilty of murdering Christopher Clark in violation of General Statutes § 53a-54a as charged in the indictment. In this appeal from the judgment rendered on the verdict the errors claimed are (1) the denial of the defendant's motion to transcribe the grand jury proceeding; (2) the denial of his motion for the presence and assistance of counsel at the hearing before the grand jury; (3) the portion of the charge to the jury stating that "every person is presumed to intend the natural and necessary consequences of his or her acts;" and (4) the failure of the trial judge to take appropriate steps to overcome the prejudice resulting from the state's tardy delivery of certain "exculpatory" material which had been requested before trial. We find no error.

The briefs contain no reference to the facts constituting the crime charged because the issues raised do not require their consideration. An affidavit submitted in support of a search and seizure warrant indicates that the defendant confessed to shooting the victim with a shotgun and that the body was found in a factory parking lot in Watertown.

I

Motions for the recordation and transcription of grand jury proceedings have been the subject of many decisions of this court uniformly finding no

error in the denial of such requests. *State* v. *Piskorski,* 177 Conn. 677, 680, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Cobbs,* 164 Conn. 402, 411-12, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973); *State* v. *Delgado,* 161 Conn. 536, 539, 290 A.2d 338 (1971), remanded for resentencing, 408 U.S. 940, 92 S. Ct. 2879, 33 L. Ed. 2d 764 (1972); *State* v. *Vennard,* 159 Conn. 385, 390, 270 A.2d 837 (1970), cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1971); see *State* v. *Stepney,* 181 Conn. 268, 280, 435 A.2d 701 (1980), cert. denied, 449 U.S. 1077, 101 S. Ct. 856, 66 L. Ed. 2d 799 (1981). The federal courts also have recognized that there is no constitutional right to a transcript of such proceedings. *United States* v. *Cramer,* 447 F.2d 210, 213-14 (2d Cir. 1971), cert. denied, 404 U.S. 1024, 92 S. Ct. 680, 30 L. Ed. 2d 674 (1972); *Chesney* v. *Robinson,* 403 F. Sup. 306, 310 n.9 (D. Conn. 1975), aff'd, 538 F.2d 308 (2d Cir.), cert. denied, 429 U.S. 867, 97 S. Ct. 177, 50 L. Ed. 2d 147 (1976). In *Chesney* the court held that the traditional shroud of secrecy accorded to grand jury proceedings must be lifted to permit cross-examination of a witness at trial, based upon his earlier contradictory testimony before the grand jury in order to implement the constitutional right of confrontation; see *Davis* v. *Alaska,* 415 U.S. 308, 317, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); but the court observed that recordation of the proceedings was not essential. *Id.*

The fact that the legislature enacted General Statutes § 54-45a, effective October 1, 1978, a date about four months after the grand jury returned the indictment in this case, does not indicate any error on the part of the presiding judge in adhering to our

previous practice[1] in denying the motion of the defendant. Although the statute had actually been passed, but was not signed by the governor, at the time of the motion, the legislature decided not to make it effective any earlier than the date selected and there is no reason for the court to have disregarded that choice.

## II

The denial of the motion for the presence of counsel at the grand jury hearing was similarly in accordance with the position this court has consistently taken that there is no such right, constitutional or otherwise. *State* v. *Piskorski,* supra, 681; *State* v. *Cobbs,* supra; *State* v. *Delgado,* supra, 539; *State* v. *Vennard,* supra; *State* v. *LaBreck,* 159 Conn. 346, 347–48, 269 A.2d 74 (1970); *State* v. *Stallings,* 154 Conn. 272, 283, 224 A.2d 718 (1966); see Practice Book § 609. Much of the defendant's argument was responded to in *Piskorski,* where we considered whether to modify this view in the light of the extension of the right to counsel to a preliminary hearing of the kind deemed to be a "critical stage" of the Alabama criminal process in *Coleman* v. *Alabama,* 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970). We continue to retain our view that our unique Connecticut grand jury procedure, which excludes both prosecuting and defense attorneys from participation in the hearing, is not a "critical stage" requiring the presence of counsel. *State* v. *Piskorski,* supra, 681. In *Cobbs* v. *Robinson,* 528

[1] Practice Book § 609 permitted to be present while the grand jury was hearing evidence only: "(1) The witness under examination; (2) Interpreters when needed; (3) Such security personnel as . . . necessary; (4) The defendant within the discretion of the judicial authority." In 1981, long after the indictment in this case, presumably in response to General Statutes § 54-45a, subparagraph (5) was added to allow the presence of a court reporter.

F.2d 1331, 1338–39 (2d Cir. 1975), cert. denied, 424 U.S. 947, 96 S. Ct. 1419, 47 L. Ed. 2d 354 (1976), where our grand jury procedure was thoroughly scrutinized at the federal circuit court level, a clear distinction was found from the Alabama preliminary hearing referred to in *Coleman.*

The only additional consideration advanced by the defendant is his limited mental capacity, claimed to be evidenced by his record as a student who had left school when he was sixteen years of age after completing two years of high school, because he was told he would not graduate.[2] The defendant's comparative youth and lack of a full high school education hardly indicate mental deficiency. There is no suggestion in the record that the defendant suffered any disability of a mental nature which would have prompted the standard examination for competency to stand trial pursuant to General Statutes § 54-56d (formerly § 54-40). We have no occasion, therefore, to decide whether some modification of our rule excluding counsel from the grand jury hearing should be made where a substantial mental deficiency appears.

### III

The claim of error based upon the inclusion in the charge to the petit jury of the statement, "[e]very person is presumed to intend the natural and neces-

---

[2] In his brief the defendant refers to some testimony that he was deficient in "the verbal area of his intellectual functioning," which was "less than average," that in the area of word comprehension and communication "he functions at approximately third grade level, which is grossly deficient for a young man his age and experience," and that his reading ability was abnormally low. This evidence was presented at the hearing on the motion to suppress his confession on December 5, 1978. Obviously it could not have been considered by the judge, *Missal, J.,* who presided at the grand jury proceeding on May 24, 1978, and ruled upon the motion in question.

sary consequences of his . . . acts," has been a familiar subject of consideration in this court since the decision of the Supreme Court of the United States in *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), which pointed to the potential such an instruction may have for shifting the burden of proof to a defendant upon the issue of intent, an essential element for the charge of murder in this case. *State* v. *Pina,* 186 Conn. 261, 440 A.2d 967 (1982); *State* v. *Stankowski,* 184 Conn. 121, 148–53, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Brokaw,* 183 Conn. 29, 34, 438 A.2d 815 (1981); *State* v. *Truppi,* 182 Conn. 449, 452–59, 438 A.2d 713 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); *State* v. *Nemeth,* 182 Conn. 403, 411, 438 A.2d 120 (1980); *State* v. *Vasquez,* 182 Conn. 242, 245–53, 438 A.2d 424 (1980); *State* v. *Maselli,* 182 Conn. 66, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Perez,* 181 Conn. 299, 311–16, 435 A.2d 334 (1980); *State* v. *Arroyo,* 180 Conn. 171, 173–81, 429 A.2d 457 (1980). We have held that the use of the word "presumed" in one sentence of the charge does not constitute harmful error where sufficient "qualifying instructions"; *Sandstrom* v. *Montana,* supra; are also given, making clear to any reasonable juror that only its connotation of a permissive inference was meant and that the burden of proving intent remained upon the prosecution. The absence of such clarifying instructions has led us to conclude that the potential for an unconstitutional conclusive or burden-shifting presumption had not been removed, necessitating a remand for a new trial in accordance with *Sandstrom.* *State* v. *Harrison,* 178 Conn. 689,

425 A.2d 111 (1979); *State* v. *Moye*,[3] 177 Conn. 487, 493, 418 A.2d 870 (1979), vacated, 444 U.S. 983, 100 S. Ct. 199, 62 L. Ed. 2d 129, remanded, 179 Conn. 761, 410 A.2d 1011 (1979). Although the impropriety of the particular portions of the charge under challenge before us was never raised at trial by exception or otherwise, the exceptional circumstances under which we permit review of such

---

[3] In *State* v. *Moye*, 177 Conn. 487, 418 A.2d 870 (1979), this court, prior to the decision of the United States Supreme Court in *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), reviewed a claim that presumptive language in a charge upon intent had an unconstitutional burden-shifting effect, but concluded that there was also sufficient permissive inference language to find no error. The case upon appeal to the Supreme Court of the United States was remanded "for further consideration in light of *Sandstrom* v. *Montana*," following the announcement of the opinion in that case. *Moye* v. *Connecticut*, 444 U.S. 983, 100 S. Ct. 199, 62 L. Ed. 2d 129 (1979). This court, without opinion, remanded the case for a new trial "and for further proceedings not inconsistent with" *Sandstrom* and *State* v. *Harrison*, 178 Conn. 689, 425 A.2d 111 (1979). The defendant claims that the charge in this case is substantially the same as that in *State* v. *Moye*, where we ultimately ordered a new trial. We must concede the accuracy of this observation. We are not inclined, however, to revert to the minimal precedential value of the remand order in *Moye* in disregard of our many decisions thereafter refusing to find reversible error in such a charge. *State* v. *Pina*, 186 Conn. 261, 440 A.2d 967 (1982); *State* v. *Stankowski*, 184 Conn. 121, 148–53, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Brokaw*, 183 Conn. 29, 34, 438 A.2d 815 (1981); *State* v. *Truppi*, 182 Conn. 449, 452–59, 438 A.2d 713 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); *State* v. *Nemeth*, 182 Conn. 403, 411, 438 A.2d 120 (1980); *State* v. *Vasquez*, 182 Conn. 242, 245–53, 438 A.2d 424 (1980); *State* v. *Maselli*, 182 Conn. 66, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Perez*, 181 Conn. 299, 311–16, 435 A.2d 334 (1980); *State* v. *Arroyo*, 180 Conn. 171, 173–81, 429 A.2d 457 (1980). We see no basis for the defendant's claim that one such deviation from the norm creates a precedent which we must always follow in similar cases to avoid depriving another defendant of equal protection of the laws.

belated claims of error are satisfied. *State* v. *Moye,* supra, 490; *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973).

As the defendant virtually concedes, the charge in this case[4] is quite similar to those we have scrutinized and found not to involve harmful error in the long series of cases commencing with *State* v. *Arroyo,* supra, the most recent of which is *State* v. *Pina,* 186 Conn. 261, 440 A.2d 967 (1982). Despite the inclusion of the earlier presumptive language, the court also stated that "the *only way* in which a jury can determine what a person's purpose or intention was at a given time, aside from that person's own testimony, is by determining what that

[4] The relevant portion of the charge is as follows: "The third element which the State must prove is that the person causing the death of the person must have done so with the intent to cause the death. In other words, the State must prove beyond a reasonable doubt that the accused intended to cause the death of Christopher Clark. Now, intent is a mental process. The person's intention may be inferred from his conduct. Every person is presumed to intend the natural and necessary consequences of his or her acts. It is often impossible and never necessary to prove criminal intent by direct evidence. Ordinarily intent can be proved only by circumstantial evidence, as I have explained that term to you. What a person's purpose or intention has been is necessarily very largely a matter of inference. A person may take the stand and testify directly as to what his or her purpose or intention was and that testimony you can believe or not according to whether or not it warrants belief. But no witness can be expected to come here and testify that he looked into another person's mind and saw therein a certain purpose or intention. The only way in which a Jury can determine what a person's purpose or intention was at a given time, aside from that person's own testimony, is by determining what that person's conduct was and what the circumstances were surrounding his conduct, and from those infer what his or her purpose or intention was. To draw such an inference is not only a privilege, but it is also the duty of the Jury provided, of course, the inference drawn is a reasonable one. In this case therefore it will be part of your duty to draw all reasonable inferences from the conduct of the accused in the light of the surrounding circumstances as to what purpose or intention was in his mind at various times."

person's conduct was and what the circumstances were surrounding his conduct, and from those *infer* what his or her purpose or intention was." (Emphasis added.) Without detailing the many other portions of the charge relating to intent consistently referring to it as an inference and imposing the burden of proving it upon the state, we are satisfied from our review that the single reference to a presumption was adequately clarified to preclude any misunderstanding on the part of the jury.

## IV

The final claim of error is related to the tardy disclosure made by the state of certain material demanded by the defendant in detailed motions which he filed on July 20, 1978. The state filed a response on October 26, indicating that it had none of the "exculpatory" information requested, that all written or recorded statements of the defendant to any law enforcement officer had been supplied, that any objects obtained from the defendant would be produced for inspection, and that records of physical or mental examinations of the defendant, prior convictions, if any, and names of witnesses would also be supplied. At a hearing on November 14 to resolve pending pretrial motions, the attorneys for both the state and the defendant, in responding to an inquiry of the trial judge, said that there had been full compliance with the disclosure motion. The presentation of testimony at the trial began on December 1, 1978. On December 12, 1978, during the deposition of a hospitalized police officer who had attended a polygraph examination of the defendant, some reference was made to a written report of this officer concerning the statement made by the defendant during the polygraph examination.

The next day in court counsel for the defendant objected to the admission of the deposition testimony upon the ground of surprise resulting from the failure of the state to have furnished a copy of this officer's report before trial in accordance with his motion for disclosure and also upon some other grounds.[5] The trial court conducted a lengthy hearing on the admissibility of the deposition and ultimately allowed it to be used, finding that the information contained in the officer's report was substantially the same as that in another statement which had been supplied before trial and that the failure to disclose the report was unintentional.

During the course of this hearing the state marked as exhibits for identification two state police files containing various documents pertaining to the investigation of the crime. These files had been in the office of the state's attorney at the time meetings with counsel for the defendant were held before trial for the purpose of examining various items disclosed by the state. The state's attorney[6] did not dispute the assertion that these files had not been shown to the defendant's counsel, but said that he had assumed the same material was included in the files which were made available.

After the ruling on the deposition on December 14, 1978, counsel for the defendant stated that as a result of his further examination of the two state police files he had discovered references to other documents not previously given to him which he

---

[5] The additional grounds raised related to the competency of the defendant and the admissibility of the statements of the defendant contained in the deposition. None of these issues has been pursued on appeal.

[6] The state's attorney who handled the compliance with the defendant's disclosure motion did not act as trial counsel. See *Jennings Co.* v. *DiGenova*, 107 Conn. 491, 497, 141 A. 866 (1928).

claimed were exculpatory, mentioning specifically six reports requested in his motion for disclosure. The next day the defendant filed a motion for dismissal of the charges against him because of prosecutorial misconduct in failing to disclose material claimed to be exculpatory and requested in his motion for disclosure. Counsel for the defendant said his examination of the two state police files indicated the existence of many other items requested in his motion for disclosure which were never furnished. The court directed a clerk to provide copies of all requested documents to the defendant. These were marked as court exhibits and consisted of several reports of police investigating officers, some scientific testing reports and a weather report. These missing documents had been received only that day, December 15, from the state police.

On the next trial day, December 18, the motion to dismiss for prosecutorial misconduct was argued. In addition to the undisclosed documents he had previously mentioned, counsel for the defendant also said that tape recordings of statements made by the defendant had only then been provided to him. The trial court filed a written memorandum finding that, although the missing information should have been furnished earlier, the failure to do so did not result from wilful misconduct but from inadvertence. Reference was made to the various remedies for noncompliance with a disclosure order set forth in Practice Book § 747[7] and the court concluded that the extreme sanction of dismissal of the charges was not warranted under all the circumstances.

[7] "[Practice Book] Sec. 747. ——SANCTIONS FOR FAILURE TO COMPLY
If the prosecuting authority fails to comply with Sec. 740, the judicial authority may, on motion of the defendant or on his own motion, grant appropriate relief, which may include one or more of the following: (1) Requiring the prosecuting authority to comply;

The defendant then moved for a continuance, stating that at least three weeks would be needed to complete his investigation of the recently discovered material. A ruling on this motion was deferred until the following day, when the defendant presented the testimony of a private investigator employed to assist in the defense of the case. This witness stated that it would take at least three weeks to complete his investigation of the new material because of the difficulty of locating people during the Christmas holiday season. The trial court granted a continuance until January 3, 1979, stating that the defendant would have the three weeks requested before being required to present any evidence in defense, because the state's case would not be completed until then. The court also declared that additional time would be allowed if the recess ordered of fourteen days proved to be insufficient.

On January 3, just before the trial was to resume, the defendant filed a motion for an additional continuance of three weeks to investigate further the material which had been belatedly disclosed by the state. No argument or explanation of the request for additional time was presented, the defendant being content to let the motion "speak for itself." The trial court denied the motion without comment.

The defendant contends that the failure of the state to furnish the additional statements of the accused and the laboratory reports of the examina-

(2) Granting the defendant additional time or a continuance; (3) Relieving the defendant from making a disclosure required by Sec. 756, prohibiting the prosecuting authority from introducing specified evidence, or dismissing the charges; or (4) Entering such other order as he deems proper."

tions of the physical evidence necessitates a new trial, because such information is related to the determination of guilt or innocence. Neither in his brief nor in his motion for a new trial filed in the trial court after the verdict has the defendant pointed out any specific instance of probable prejudice resulting from the state's tardy disclosure. There are no references in his brief to the contents of any of the items delivered to him on December 15. The reports of police officers concerning statements made by the defendant, as well as the tape recordings of those statements, may well have been cumulative of the copies of his statements previously furnished. Such references to the laboratory reports which we have discovered in the transcript indicate negative test results, i.e., the absence of any connection between the defendant and certain physical evidence examined. The defendant, of course, had a full opportunity to present all of this material, which would not ordinarily be part of the state's case. Although the defendant claims in general terms that he might have been able to cross-examine some of the state's witnesses more effectively if he had received the requested items sooner, no single instance of questions suggested by the material but not asked of witnesses who had previously testified for the state has been cited. No attempt to recall any of these witnesses for further cross-examination because of the newly discovered information appears to have been made. We also note that the defendant at no point sought a mistrial on the ground that he could not obtain a fair trial but persisted in seeking a dismissal.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."

*Smith* v. *Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). Although we cannot condone the failure of the state's attorney before trial to have made a more thorough examination of the material in his possession and a more searching inquiry of the investigating officers, the absence of any concrete indication of prejudice to the defendant leads us to conclude that a new trial is not warranted. *State* v. *Gunning,* 183 Conn. 299, 309, 439 A.2d 339 (1981); *State* v. *Festo,* 181 Conn. 254, 260–66, 435 A.2d 38 (1980). "[T]he aim of due process 'is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused.' " *Smith* v. *Phillips,* supra.

"The purpose of criminal discovery is to prevent surprise and to afford the parties a reasonable opportunity to prepare for trial." *State* v. *Festo,* supra, 265. Practice Book § 747 provides several sanctions for failure to make a proper disclosure which include ordering the prosecutor to comply and granting the defendant a continuance, measures adopted by the court in this case. "In determining what sanction is appropriate, the trial court should consider the reason why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." *State* v. *Festo,* supra, 265. From our review we are satisfied that the trial court gave due consideration to these factors in ordering a continuance. His refusal to allow a further continuance as requested in the defendant's second motion, which, in contrast to the first motion for a continuance, was unsupported by testimony or

explanation of the reasons for seeking additional time, was well within the reasonable exercise of his discretion.

There is no error.

In this opinion the other judges concurred.